**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HUNG THANH LE, ) | NO. CV 09-04070 SS |
| ) Plaintiff, ) | |
| ) v. ) | **MEMORANDUM DECISION AND ORDER** |
| ) MICHAEL J. ASTRUE, ) Commissioner of the Social ) Security Administration, ) ) Defendant. ) ) | |

**INTRODUCTION**

Plaintiff Hung Thanh Le ("Plaintiff") brings this action seeking to reverse the decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") for denying his application for Social Security Disability Insurance ("SSDI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is REVERSED and REMANDED for further proceedings.

**PROCEDURAL HISTORY**

Plaintiff filed an application for SSDI on December 19, 2005.[1] (Administrative Record ("AR") 78-79). He alleged a disability onset date of April 1, 2004, (AR 78, 91), due to carpal tunnel syndrome in both hands. (AR 90).

The Agency denied Plaintiff's claim for SSDI initially on April 4, 2006. (AR 52-55). This denial was upheld upon reconsideration on June 1, 2006. (AR 58-62). Plaintiff then requested a hearing, (AR 63), which was held before Administrative Law Judge ("ALJ") Sally C. Reason on February 4, 2008. (AR 23). Plaintiff appeared with counsel and testified. (AR 23-49). Robert Hatakyamo, a vocational expert ("VE"), also testified at the hearing. (Id.).

The ALJ denied benefits on April 16, 2008. (AR 8-20). Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied his request on April 13, 2009. (AR 1-3). The ALJ's decision therefore became the final decision of the Commissioner. (Id.). Plaintiff commenced the instant action on June 8, 2009. Pursuant to the

---

[1] Plaintiff asserts that he "filed his most recent application for Social Security benefits on May 17, 2007." (Jt. Stip. at. 3). However, this application is not before the Court nor is in part of the current administrative record. Furthermore, the application that is in the current record indicates that Plaintiff filed it on December 19, 2005, which is consistent with the dates of the decisions that followed. (AR 1-3, 11-20, 52-55, 58-62). The Disability Determination and Transmittal forms dated November 28, 2006, (AR 51), and April 4, 2006, (AR 50), also indicate that Plaintiff's application filing date was December 19, 2005.

2

Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on February 10, 2010.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

    (3)  Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

    (4)  Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

    (5)  Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

    The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[3] age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

---

[3] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. § 416.945(a).

4

Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 20). At the first step, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since April 1, 2004. (AR 13). Next, he found that Plaintiff had severe impairments of bilateral carpal tunnel syndrom (status post-carpal tunnel surgery), bilateral trigger finger (status post-surgery), bilateral cubital tunnel syndrome (status post-surgery), and bilateral shoulder impingement. (AR 16).

At the third step, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment. (AR 16). The ALJ specifically noted that "the claimant's upper extremity impairments have not resulted in the requisite inability to perform fine and gross movements effectively . . . to meet or equal medical Listing 1.02(B)." (Id.).

Next, at step four, the ALJ found that Plaintiff was "capable of performing his past relevant work as a digitizer operator/hydraulic test

specialist." (AR 20). She also found that Plaintiff had the "residual functional capacity to perform work not involving forceful gripping, grasping, and torquing activities with his upper extremities." (AR 16). Because the ALJ determined that Plaintiff could perform his past relevant work ("PRW"), she concluded that Plaintiff was not currently disabled and did not proceed to step five. (AR 20).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

6

**DISCUSSION**

Plaintiff contends the ALJ erred for a number of reasons. (Jt. Stip. at 4-30). Initially, Plaintiff asserts that the ALJ did not properly consider Plaintiff's treating physician's opinion. She also contends that the ALJ failed to consider the impact of side effects of Plaintiff's medication on her ability to work. (Jt. Stip. at 4-8). The Court agrees with these specific contentions, and for the reasons discussed below, the Court finds that the ALJ's decision should be reversed and this action remanded for further proceedings.

**A.   The ALJ Failed To Properly Consider Plaintiff's Treating Physician's Opinion**

Plaintiff contends that the ALJ did not properly consider the opinion of Plaintiff's treating physician in determining Plaintiff's RFC. (Jt. Stip. at 4-8). The Court agrees.

Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). However, if the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may reject the

treating doctor's opinion only by providing "'specific and legitimate' reasons' supported by substantial evidence in the record for so doing." Lester, 81 F.3d at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

Plaintiff contends that the ALJ failed to properly consider the opinion of Plaintiff's treating physician, Dr. Edwin Haronian ("Dr. Haronian"), when she determined Plaintiff's RFC. (Jt. Stip. at 4-8). Plaintiff argues that the ALJ also failed to consider Dr. Haronian's conclusion that Plaintiff was a "qualified injured worker" ("QIW") and could not return to his previous work activities. (Jt. Stip. at 6). Specifically, Plaintiff argues that the ALJ "gave no reason for rejecting the limitations established by Plaintiff's treating [] physician[]." (Id.).

Contrary to the ALJ's express representation that she considered Dr. Haronian's opinion when she determined Plaintiff's RFC, the record indicates otherwise. (AR 16, 18). The ALJ stated, "Dr. Haronian has provided specific functional limitations, which have been factored into the residual functional capacity establishe[d] below." (AR 16). The ALJ also concluded after "taking into account the limitations cited by Dr. Haronian, the undersigned finds that the claimant has the residual functional capacity to perform work not involving forceful gripping, grasping, and torquing activities with his upper extremities." (AR 18).

On December 9, 2004, after a thorough evaluation of Plaintiff, Dr. Haronian issued a "Permanent and Stationary Report of a Primary Treating

8

Physician." (AR 342-49). In that report, Dr. Haronian precluded Plaintiff from heavy lifting, pushing, pulling, and power gripping with both wrists. (AR 348). Plaintiff was precluded from climbing using his right upper extremity, and keying using his left upper extremity. (Id.). He was also precluded from working at or above the shoulder levels bilaterally. (Id.).

The ALJ assessed Plaintiff's RFC as being able to perform work as long as it did not involve forceful gripping, grasping, and torquing activities with his upper extremities. (AR 16). The ALJ's RFC failed to incorporate certain of Dr. Haronian's restrictions. (AR 16, 348). For example, the ALJ did not include a restriction for pushing, pulling, and/or keying concerning Plaintiff's upper extremity, as well as a restriction for working at or above the shoulder level. (AR 16). Additionally, the ALJ included the term "forceful" to Plaintiff's RFC. (AR 16). It is unclear if the ALJ used the term "forceful" as her translation from Dr. Haronian's preclusion of "heavy lifting" and/or "power gripping."

Moreover, the ALJ had a duty to translate Dr. Haronian's workers' compensation findings into Social Security terms, which she failed to do here. Although workers' compensation disability evaluations are not controlling in Social Security cases, an ALJ must nevertheless determine what inferences may "logically [flow] from the evidence." Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988); Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002). The ALJ must

9

"translate" terms of art contained in such medical terminology in order to accurately assess the implications of those opinions for the Social Security disability determination.  "While the ALJ's decision need not contain an explicit `translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.'" Booth, 181 F. Supp. 2d at 1105.  The ALJ's decision did not indicate how Dr. Haronian's workers compensation findings should be applied here.

Furthermore, Dr. Haronian's restriction for pushing, pulling, and keying was especially significant because Plaintiff's past job as a hydraulic test operator, which the ALJ found Plaintiff could perform, required frequent use of the hands including pushing, pulling, and/or keying.  (AR 37, 84, 129).  The ALJ's inclusion of the term "forceful" in Plaintiff's RFC is also noteworthy since the term "forceful" was pivotal in the ALJ's finding that Plaintiff could go back to his past relevant work.[4]

Although the ALJ expressly states that she relied upon Dr. Haronian's findings when she determined Plaintiff's RFC, it is appears

---

[4] The ALJ and VE concluded that Plaintiff's past relevant work did not involve forceful gripping, grasping, and torquing activities with his upper extremities. (AR 36-38).  It appears that Dr. Haronian would have precluded Plaintiff from the "non-forceful" version of these activities, i.e., his past relevant work.  The VE specifically noted that although Plaintiff frequently used his hands, he did not believe Plaintiff's past relevant work involved forceful use of his hands. (Id.).

the ALJ's assessment is not consistent with Dr. Haronian's conclusions. (AR 17, 18). Thus, remand is warranted. Upon remand, the ALJ must fully consider any limitations on Plaintiff indicated by Dr. Haronian's opinion. See Lester, 81 F.3d at 830. If she rejects Dr. Haronian's opinion, she must provide specific and legitimate reasons supported by substantial evidence in the record. why she is rejecting or giving less weight to the opinion of Dr. Haronian. Id. However, given that Plaintiff had significant surgeries subsequent to evaluations made by Dr. Haronian, the state agency, and the consultative examiner, the ALJ should request that Plaintiff undergo another physical RFC assessment in order to more clearly establish the effects of Plaintiff's impairments on his ability to work.

**B. The ALJ Failed To Properly Consider The Side Effects Of Plaintiff's Medication**

Plaintiff contends that the ALJ failed to consider the side effects of Plaintiff's Vicodin use. (Jt. Stip. at 6-8). Plaintiff testified that Vicodin made him sleepy all the time which caused him to lay down two or three times a day for one to two hours. (Jt. Stip. at 7). Plaintiff argues that because the ALJ did not properly address "the side-effect of Plaintiff's medication, her residual functional capacity formulation was incomplete." (Jt. Stip. at 8). The Court agrees.

When the ALJ is evaluating Plaintiff's limitations, she must consider the side effects of medication. Social Security Ruling 96-7p specifically requires consideration of the "type, dosage, effectiveness,

11

and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv); 416.929(c)(3)(iv). The Ninth Circuit has observed that an ALJ must "consider all factors that might have a significant impact on an individual's ability to work." <u>Erickson v. Shalala</u>, 9 F.3d 813, 817 (9th Cir. 1993) (citing <u>Varney v. Secretary of HHS</u>, 846 F.2d 581, 585 (9th Cir. 1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." <u>Erickson</u>, 9 F.3d at 818.

In her decision, the ALJ does discuss Plaintiff's allegations of side effects caused by his Vicodin use. (AR 18). Specifically, the ALJ states that "there [wa]s no credible evidence of regular usage of strong medication to alleviate pain that would significantly impair the claimant's ability to do basic work activities and no documented evidence in the medical record of any significant side effects." (<u>Id.</u>). This conclusion is contradicted by the record.

Plaintiff's medical records indicate that he had been taking Vicodin very regularly to alleviate his pain since 1997. (<u>See</u> AR 268-404). Vicodin qualifies as strong medication to alleviate pain. Although the medical records do not show evidence of severe side effects, Plaintiff testified that his Vicodin use had increased by almost double his past dosage. (AR 32). It is this increase in pain medication and its side effects that the ALJ failed to consider in her assessment of Plaintiff's ability to work. (AR 18).

12

During the hearing, Plaintiff's counsel asked Plaintiff, "after the latest rounds of surgery, did they have to change the amount of Vicodin you're taking?" (AR 32). Plaintiff responded, "because I had to take it for quite a long time since I had the surgery from 1996 [to] now . . . the medication doesn't do any good. So the doctor ha[d] to increase it from 325 milligram[s] to 625 milligram[s]." (Id.). Plaintiff's counsel then asked, "how does the Vicodin affect you?" to which Plaintiff responded that "it's helped me with the pain but [I] cannot do anything because I feel sleepy all the time." (Id.).

It is unclear from the record precisely when Plaintiff's Vicodin use increased. Because of the increase in frequency and dosage of Vicodin, Plaintiff testified that he was no longer able to drive and needed help with basic daily activities. (AR 23, 32-33). To the extent that the record was inadequate to allow for proper evaluation of Plaintiff's testimony on this issue, the ALJ failed to conduct an appropriate inquiry or gather additional information.[5] Failure to sufficiently develop the record constitutes grounds for remand. Tonapetyan v. Halter, 242 F.3d 1144, 1151 (9th Cir. 2001).

Because Plaintiff's increased usage and dosage of pain medication could cause significant side effects, it was error for the ALJ not to expressly consider those side effects in her evaluation of Plaintiff's

---

[5] The Court acknowledges that the ALJ kept Plaintiff's record open for an additional thirty days. (AR 47). However, the ALJ allowed the record to be kept open so that Plaintiff could supplement it with additional vocational records, as well medical records to demonstrate Plaintiff's progress for his "latest surgery," not for the purpose of addressing the side effects issue. (Id.).

13

disability claim. The case must be remanded to remedy this defect. On remand, if necessary, the ALJ should utilize a medical expert to testify about the effect of Plaintiff's increased medication usage on his ability to work.

**C.    Remand Is Required To Remedy Defects In The ALJ's Decision**

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

**D.    Plaintiff's Remaining Contentions Implicate The Need For And Fair Consideration Of The Treating Physician's Opinion**

Plaintiff's contentions implicate the need for full and fair consideration of Dr. Haronian's RFC assessment of Plaintiff and Plaintiff's side effects for his increased Vicodin use for which this case is being remanded. These contentions address the ALJ's determination of Plaintiff's RFC, the ALJ's determination that Plaintiff could return to his past relevant work, and the ALJ's ability to present a complete and accurate hypothetical question to the VE. Analysis of these matters is necessarily linked to the issues discussed above. Accordingly, the Court declines to address Plaintiff's remaining contentions.

14

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 6, 2010

```
          /S/
        _____
        SUZANNE H. SEGAL
        UNITED STATES MAGISTRATE JUDGE
```

15